1  JOSEPH P. RUSSONIELLO (CSBN 44332)
   United States Attorney
2
   BRIAN J. STRETCH (CSBN 163973)
3  Chief, Criminal Division

4  KYLE F. WALDINGER (ILSB 6238304)
   Assistant United States Attorney
5
       450 Golden Gate Avenue, 11th Floor
6      San Francisco, California 94102
       Telephone: (415) 436-6830
7      Facsimile: (415) 436-7234

8  Attorneys for Plaintiff

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12  UNITED STATES OF AMERICA,          )    No.:    CR 07-0246 MHP
                                       )
13              Plaintiff,             )    **UNITED STATES' SENTENCING**
                                       )    **MEMORANDUM**
14       v.                            )
                                       )
15  ZENAIDA SMITH,                     )    Hrg. Date:   July 7, 2008
                                       )    Time:        9:00 a.m.
16              Defendant.             )    Court:       Hon. Marilyn Hall Patel
                                       )
17  ───────────────────────────────── )

18       The defendant Zenaida Smith is scheduled to be sentenced before this Court on July 7,

19  2008.  On February 11, 2008, the defendant pleaded guilty to charges of unauthorized access of a

20  protected computer (Count One), wire fraud (Count Sixteen), engaging in monetary transactions

21  in property derived from specified unlawful activity (Count Thirty-One), and aggravated identity

22  theft (Count Forty-Two), in violation of Title 18, United States Code, Sections 1030(a)(4), 1343,

23  1957, and 1028A(a)(1), respectively.

24       The United States now files this Sentencing Memorandum to address the offense conduct,

25  the provisions of the parties' Plea Agreement, and the calculation of the Sentencing Guidelines,

26  as well as to advise the Court of its sentencing recommendation of 61 months' imprisonment.

27  The United States also requests that the Court impose a three-year term of supervised release and

28  enter an order requiring the defendant to pay restitution to the victim Panalpina, Inc. in the

USA'S SENTENCING MEMORANDUM
CR 07-0246 MHP

amount of $384,356.79 and to pay restitution to Panalpina's insurer (Chubb) in the amount of $100,000. Finally, the Court should order the defendant to pay the $400 special assessment at the time of sentencing.

## DISCUSSION

### I.      The Offense Conduct.

In the PSR, the Probation Officer provides an accurate description of the offense conduct in this case. See PSR, ¶¶ 7–11.

From August 2004 to June 2006, the defendant Zenaida Smith was the North American Payroll Manager for a company known as Panalpina, Inc. Panalpina is a Switzerland-based air freight company. Panalpina terminated Smith's employment in June 2006 for performance-based reasons unrelated to this matter.

Following Smith's termination, Panalpina personnel attempted to reconcile the company's payroll records. They met with little success until approximately November 2006, when they discovered a number of "Code 1" disbursements that had not previously been included in the reconciliation. In general terms, "Code 1" can be described as an internal Panalpina computer payroll code used for miscellaneous payments for expenses other than salary and wages (such as for work-related reimbursements).

Panalpina ultimately discovered that, from approximately February 2005 to June 2006, over $480,000 in Code 1 payments had been made to a direct deposit account ostensibly held in the name of an individual identified herein and in the Superseding Indictment as "S.M." S.M. had worked for Panalpina in the Miami, Florida, area until about September 2004. Panalpina determined that this direct deposit account was at Valley Credit Union in Santa Clara County. The United States' investigation showed, and the defendant has admitted, that she used S.M.'s identity information (which she presumably obtained from S.M.'s personnel file at Panalpina) to add S.M. as an authorized user on a Valley Credit Union account controlled by Smith.

Most of the payroll functions at Panalpina went through Smith. This enabled her to conceal information about her activities. For example, it appears that Smith "purged" payroll records from Panalpina's system in order to prevent detection of her crimes. Indeed, a log file

1  from Smith's Panalpina computer showed that, after she processed payrolls for the company

2  (which included the Code 1 payments to S.M.), she purged those payroll records from

3  Panalpina's computer system.  Panalpina nevertheless was able to recover many of these records

4  from ADP, its payroll processor.  In addition, all pay stubs were routed through Smith's

5  department, and it appears that Smith was able to intercept and destroy any pay stubs for S.M.

6      The United States obtained records and statements related to the defendant's Valley

7  Credit Union accounts.  Most of the embezzled funds were deposited into two linked accounts.

8  These credit union records show numerous withdrawals from locations in the Philippines, Las

9  Vegas, Disneyland, and elsewhere.  The United States has also identified numerous cash

10 withdrawals at casinos, large debit purchases from retailers such as the Home Shopping Network

11 and Fry's Electronics, and significant transfers of assets (i.e., $95,000) to the Philippines.

12 **II.    Plea Agreement.**

13     The parties entered into a written plea agreement pursuant to Federal Rule of Criminal

14 Procedure 11(c)(1)(A) and (B).  The parties agreed that the base offense level for the grouped

15 offenses to which the defendant pleaded guilty was level 21, pursuant to U.S.S.G. § 2S1.1(a)(1).

16 The parties also agreed that a one-point enhancement in the offense level was appropriate

17 pursuant to U.S.S.G. § 2S1.1(b)(2)(A) based on the defendant's conviction under 18 U.S.C.

18 § 1957.  Further, the parties agreed that a two-point enhancement for abuse of position of trust

19 pursuant to U.S.S.G. § 3B1.3 was appropriate, for a total offense level (before an adjustment for

20 acceptance of responsibility) of 24.

21     Separate and apart from those Guidelines calculations, the parties agreed that the

22 defendant's guilty plea to Count Forty-Two charging her with aggravated identity theft under 18

23 U.S.C. § 1028A subjected her to a mandatory minimum term of imprisonment of two years.  The

24 parties further agreed that that two-year term of imprisonment must be imposed to run

25 consecutively to the sentence for the remaining counts (Counts One, Sixteen, and Thirty-One).

26     The parties' plea agreement did not prohibit the defendant from moving for a downward

27 departure from the Guidelines calculations for Counts One, Sixteen, and Thirty-One.

28 / / /

**III.   The Guidelines Calculations.**

    A.   <u>Offense Level</u>

The government agrees with the Probation Officer that the adjusted offense level for Counts One, Sixteen, and Thirty-One is level 24.  The government further agrees that the defendant has met the requirements of U.S.S.G. § 3E1.1 regarding acceptance of responsibility and that the offense level should be reduced by three levels to level 21.  The government agrees that the sentence imposed on these counts must be served consecutively to the two-year sentence that this Court must impose for the defendant's conviction under 18 U.S.C. § 1028A.

    B.   <u>Criminal History Category</u>

Based on the information set out in the PSR, the government agrees that defendant has no criminal history points and that her criminal history category is category I.

**IV.   Sentencing Recommendation.**

The United States recommends that the Court impose a term of imprisonment of 37 months for the convictions under 18 U.S.C. §§ 1030, 1343, and 1957 (Counts One, Sixteen, and Thirty-One), to be followed by a mandatory consecutive term of imprisonment of 24 months for the conviction under 18 U.S.C. § 1028A (Count Forty-Two).  This results in a total sentence of 61 months' imprisonment.

The United States believes that, taking into account Congress's directives in 18 U.S.C. § 1028A, the applicable Guidelines range, and the factors set out in 18 U.S.C. § 3553(a), this sentence is appropriate.  Simply put, the defendant's actions were extremely serious and deserving of punishment, and there are no factors that clearly warrant a shorter sentence.

<u>First</u>, the defendant stole a significant amount of money — over $480,000.  This is the equivalent of 10 years of after-tax wages for many individuals.  A sentence of half that period of time appropriately reflects the seriousness of the magnitude of the theft.

<u>Second</u>, despite her suggestions to the contrary, the evidence shows that the defendant used much of the stolen money for her own benefit and for conspicuous consumption.  For example, several witnesses have informed the United States that the defendant is building a house in the Philippines.  And indeed, the credit union records in this case show that the

defendant wired at least $95,000 to that country.  See Exhibit 1 (credit union records showing wire transfers of $50,000 and $45,000 to the Philippines National Bank, or PNB, in June 2006 and February 2007, respectively) (exhibits filed separately under seal).  The credit union records also show that the defendant made numerous ATM withdrawals and debit card purchases at casinos and bingo parlors.  See, e.g., Exhibit 2.[1]  Moreover, the credit union records show that the defendant used the stolen funds to make large-dollar purchases at department stores, electronics stores, and the Home Shopping Network.  See Exhibit 3.[2]

Third, the defendant abused the position of trust that she held at Panalpina.  As the North American Payroll Manager for the company, she was provided (and trusted) with significant discretion and autonomy in her job.  During the course of her employment, Panalpina gave the defendant two raises and allowed her to supervise several individuals in her department.  The defendant took advantage of Panalpina's trust and paid herself over $480,000 in tax-free funds.  Moreover, she took advantage of her access to confidential employee personnel records to steal the identity of an innocent woman, S.M.

Fourth, the defendant's conduct occurred over a long period of time — from February 2005 to June 2006 — and continued without interruption until she was terminated.  After the defendant began authorizing payments from Panalpina to S.M. and having those payments

---

[1]  Some of these transactions are set forth in Exhibit 2.  Bates number ZS00142 shows debit card purchases and ATM withdrawals totaling about **$600** at Cache Creek Casino on three days in April 2005.  Bates number ZS00148 shows debit card purchases and ATM withdrawals of about **$3675** at a bingo parlor and at Cache Creek Casino on four days in May 2005.  Bates number ZS00151 shows debit card purchases and ATM withdrawals totaling about **$1500** at Cache Creek Casino on a single day in June 2005.  Bates number ZS00152 shows withdrawals of over **$3600** over the course of three days in June 2005.  Bates number ZS00157 shows withdrawals at Cache Creek Casino of over **$3100** on two days in July 2005.  Finally, Bates number ZS00208 shows that, on the heels of a trip to the Philippines, the defendant immediately spent another **$2600** at Cache Creek Casino.

[2]  Some of these purchases are set forth in Exhibit 3.  Bates number ZS0152 shows Nordstrom, Apple, and Ann Taylor purchases totaling over **$1800**.  Bates number ZS00160 shows debit card purchases at Fry's Electronics, Nordstrom, Talbot's and the Home Shopping Network totaling over **$2200** on two days in August 2005.  Finally, Bates number ZS00202 shows Home Shopping Network and Fry's Electronics purchases totaling about **$1175**.

1    deposited to her accounts, she continued her illegal activity on a regular basis, taking time off

2    from doing so only when she was on vacation.  This long and uninterrupted course of criminal

3    conduct strongly supports the conclusion that the defendant stole without remorse and never

4    harbored reservations or second thoughts about the propriety of her conduct.

5        <u>Finally</u>, in addition to victimizing her employer, the defendant also stole the identity of

6    S.M.  Because of the defendant's theft of S.M.'s identity, S.M. was viewed as a potential suspect

7    by the United States.  S.M. has provided the Court with a victim impact statement; the United

8    States urges the Court to review that statement in determining an appropriate sentence.

9        None of the defendant's personal characteristics or personal circumstances counsel for a

10   sentence below the Guidelines range.  The defendant was paid well by Panalpina and received

11   generous benefits.  Although she has suggested that there were personal circumstances that

12   caused her to commit the crimes, the defendant's own credit union records demonstrate that

13   much of the money that she stole was **not** used for charitable purposes, but, rather, was used to

14   finance a lavish and spendthrift lifestyle of gambling, shopping, and travel.

15        For all of these reasons, the United States respectfully requests that the Court impose the

16   mandatory minimum term of imprisonment of two years (24 months) for the defendant's

17   conviction under 18 U.S.C. § 1028A (Count Forty-Two), to be served consecutively to a sentence

18   of 37 months' imprisonment for the defendant's convictions on Counts One, Sixteen, and Thirty-

19   One, for a total term of imprisonment of 61 months.

20                        *   *   *

21        In the alternative, should this Court determine that it need not impose a sentence within

22   the Guidelines range with respect to the defendant's convictions on Counts One, Sixteen, and

23   Thirty-One, the government requests that, in determining the extent of any departure, the Court

24   consider the directive of Congress that,

25       in determining any term of imprisonment to be imposed for the felony during
          which the means of identification was transferred, possessed, or used, a court shall

26      not in any way reduce the term to be imposed for such crime so as to compensate
          for, or otherwise take into account, any separate term of imprisonment imposed or

27      to be imposed for a violation of this section . . . .

28   18 U.S.C. § 1028A(b)(3).  Based on Congress's desire that those who commit aggravated identity

theft not get "credit" against the sentence imposed for their underlying convictions, the government requests that the Court impose a significant consecutive term of imprisonment for the convictions on Counts One, Sixteen, and Thirty-One, even if this Court declines to impose the government's requested sentence of 37 months' imprisonment on those counts.

## CONCLUSION

Based on the Guidelines calculations agreed to by the parties, the nature of the crime, the characteristics of the defendant, and on all of the factors in this case, the United States respectfully recommends a total sentence of 61 months' imprisonment (37 months for Counts One, Sixteen, and Thirty-One, followed by a consecutive sentence of 24 months for Count Forty-Two), to be followed by a three-year term of supervised release.  The Court should also impose a special assessment of $400 and order the defendant to pay restitution in the amount of $384,356.79 to Panalpina and in the amount of $100,000 to Chubb.

DATED:   June 30, 2008                    Respectfully submitted,

                                          JOSEPH P. RUSSONIELLO
                                          United States Attorney


                                          _____/s/_____
                                          KYLE F. WALDINGER
                                          Assistant United States Attorney

USA'S SENTENCING MEMORANDUM
CR 07-0246 MHP                    -7-

1

<u>CERTIFICATE OF SERVICE</u>

2      The undersigned hereby certifies that she is an employee of the office of the United States

3  Attorney, Northern District of California and is a person of such age and discretion to be

4  competent to serve papers.  The undersigned certifies that she caused copies of

5

**UNITED STATES' SENTENCING MEMORANDUM**

6

**EXHIBITS TO UNITED STATES' SENTENCING MEMORANDUM
7                            <u>UNDER SEAL</u>**

8  **UNITED STATES' APPLICATION TO SEAL EXHIBITS TO SENTENCING
                                    MEMORANDUM**

9

**SEALING ORDER**

10
in the case of **UNITED STATES V. ZENAIDA SMITH, CR 07-0246 MHP** to be served on

11
the parties in this action, by placing a true copy thereof in a sealed envelope, addressed as follows

12
which is the last known address:

13

14  **Carl Lindstrom**                          **Mr. Charles W. Mabie**
   **Lindstrom Law Offices**                     **United States Probation Officer**
15  **653 Norther San Pedro Street**             **1301 Clay Street, Suite 220S**
   **San Jose, CA 95110-2126**                  **Oakland, CA 94612-5208**
16  **Fax: 408-294-4542**                        **Fax: 510-637-3625**
   *Via Fax and Mail*                          *Via Fax*

17

18
       _____ (By Personal Service), I caused such envelope to be delivered by hand to the person or
19              offices of each addressee(s) above.

20    _X_  (By Facsimile), I caused each such document to be sent by Facsimile to the person or
              offices of each addressee(s) above.
21
      _X_  (By Mail), I caused each such envelope, with postage thereon fully prepaid, to be placed
22              in the United States mail at San Francisco, California.

23    _____ (By Fed Ex), I caused each such envelope to be delivered by FED EX to the address
               listed above.
24

25       I declare under penalty of perjury that the foregoing is true and correct.

26  Dated:    June 30, 2008

27                                              _____
                                                        /s/
                                                RAWATY YIM
28                                              United States Attorney's Office

USA'S SENTENCING MEMORANDUM
CR 07-0246 MHP